70 F.3d 1278
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dennis ELLIS, Plaintiff-Appellant,
v.
HANSON NATURAL RESOURCES COMPANY; United States of America,
Defendants-Appellees.
 No. 94-35682.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided Nov. 30, 1995.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Dennis Ellis appeals the district court's grant of summary judgment in favor of Hanson Natural Resources Company and the United States. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Ellis argues that the district court erred in holding that Oregon's Public Recreational Use of Private Lands Act, ORS 105.655 et seq., immunizes a landowner such as Hanson, which did not open its land to the public for recreational use. He contends that ORS 105.665(1) implicitly incorporates ORS 106.665(2) and applies only to landowners who invite or permit recreational use of their land; that applying the Act to landowners who close their land is contrary to the legislature's intent to encourage open land for recreational use; and that the Oregon Court of Appeals interpreted the Act to apply only to open land in Denton v. L.W. Vail Co., Inc., 541 P.2d 511 (Or.App.1975).
 
 
 4
 ORS 105.665(1) relieves "[a]n owner of land" from any duty of care to those who enter or use it for recreational purposes. Because "an owner of land" is not qualified in any way, ORS 105.665(1) on its face applies without regard to whether the landowner opens or closes his land to the public or whether the recreational use is permissive or not. We are bound by this unambiguous and plain language. State v. Person, 853 P.2d 813, 816 (Or.1993); ORS 174.010.
 
 
 5
 By the same token, we do not read ORS 105.665(1) as somehow importing the permissive use criterion of ORS 105.665(2). The Act distinguishes between permissive and non-permissive use, both in subsections (1) and (2), and in the policy statement set forth in ORS 105.660. When the legislature wanted to limit the Act's application to those landowners who invite or permit others to recreate on their land or to permissive users, it knew how to do it, and did so expressly. Compare ORS 105.665(2); ORS 105.660; ORS 105.677. This also guides our interpretation of the Act. PGE Co. v. Bureau of Labor and Indus., 859 P.2d 1143, 1146 (Or.1993).
 
 
 6
 To construe the Act in this way leaves room for ORS 105.665(2), whereas Ellis's interpretation would make 105.665(1) redundant. Under Oregon common law, landowners who invite or permit others onto their land generally have a greater responsibility than those landowners who do not. Compare Woolston v. Wells, 687 P.2d 144 (Or.1984), Denton, 541 P.2d at 514-515. Accordingly, ORS 105.665(2) affords an extra layer of protection for those who open land for permissive use. Nor do we agree with Ellis that our interpretation of ORS 105.665(1) renders it meaningless in light of common law protections afforded to landowners vis-a-vis trespassers; the legislature was codifying protection for landowners and does not have to change those protections in order to do so.
 
 
 7
 Applying the Act to landowners who close their land is not inconsistent with legislative intent. In ORS 105.660 the legislature declared that it is the public policy of Oregon
 
 
 8
 to encourage owners of land to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes and, in the case of permissive use, by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes.
 
 
 9
 Thus, permissive use is only one "case" of possible uses. Although Ellis argues that to apply the Act to owners of closed land runs counter to the incentive to open land that immunity is meant to offer, we cannot say that eliminating bright line distinctions between landowners who sufficiently open their land as compared with those who do not has no tendency to alleviate a landowner's uncertainty about his status as a covered or uncovered landowner--and thus to further the purpose of increasing recreational use of Oregon land.
 
 
 10
 Nor does Denton require otherwise. To the extent that it bears on our task of predicting what the Oregon Supreme Court would hold, we see its dicta as suggesting that the statute does apply even to land that has been closed to the public.
 
 
 11
 Finally, our interpretation of ORS 105.665(1) comports with how courts in other states have construed similarly worded recreational land use statutes. See Gallo v. Yamaha Motor Corp., U.S.A., 526 A.2d 359, 363 (Pa.Super.1987); Peterson v. Schwertley, 460 N.W.2d 469, 471 (Iowa 1990); LaCroix v. State Department of Transp., 477 So.2d 1246, 1250 (La.App.1985); Hardy v. Gullo, 499 N.Y.S.2d 159, 160 (Ny.App.Div.1986).
 
 
 12
 We therefore hold that ORS 105.665(1) applies to Hanson.[1]
 
 II
 
 13
 Ellis argues that even if the Act does apply, the district court erred in holding that no triable issue of fact exists as to whether Hanson's actions amount to a "willful, wanton and reckless failure ... to guard or warn against a known danger [ ] ..." under ORS 105.675(1), which excepts such conduct from the immunity otherwise conferred by ORS 105.665(1).
 
 
 14
 We disagree. The evidence in the record, taken in the light most favorable to Ellis, establishes that before the July 1991 accident, in some of its other forest properties, Hanson had installed yellow-painted metal gates that were painted "safety yellow" for "visibility"; Hanson was aware that when its property was open to the public in the past, there had been repeated reports of vandalism and sign removal; Hanson was aware that in April two apparently intoxicated members of the public had driven a four-wheel drive truck one mile up the gated road and had removed the marker board, but the Guard had informed Hanson immediately and repaired the marker board; Hanson was aware that the marker board had been removed on two other occasions and Hanson also knew that, on both occasions, the Guard had repaired the marker board; and Hanson was aware of no other accidents involving the gated road or any other cable gated road.
 
 
 15
 We agree with the district court that Ellis failed to raise a triable issue. Hanson was aware of no prior related accidents in its forest property, and it knew of only one prior instance of unauthorized use of the gated road and was aware of only the occasional removal (and successful subsequent repair) of the marker board. Under these circumstances, Hanson's use of the cable gate design (as compared with the yellow metal beam gate design) cannot amount to "willful, wanton and reckless" conduct. Denton, 541 P.2d at 512-15. Further, there is nothing to suggest that the cable gate along an unpaved, private forest road is inherently dangerous. Compare Simpson v. United States, 652 F.2d 831 (9th Cir.1981) (involving defendant's public recreational facility featuring scalding hot water pools, where defendant knew of a similar accident that occurred earlier, knew of the dangerous condition at issue, and knew that no warnings had been placed nearby); and Termini v. United States, 963 F.2d 1264 (9th Cir.1992) (involving defendant's uphill road, open to the public, bladed and maintained so as to resemble a normal thoroughfare, which ended at cliff's edge at the end of an uphill expanse of road, not visible from the beginning of the spur and came into view only after one had driven over the crest of the hill and was only a short distance from the cliff).
 
 III
 
 16
 Ellis argues that the district court erred in holding that it lacked subject matter jurisdiction over Ellis's FTCA claim against the Government on the ground that Ellis filed his complaint prior to the final denial of an administrative claim in violation of 28 U.S.C. Sec. 2675(a) and did not subsequently commence an action within the limitations period set forth in 28 U.S.C. Sec. 2401(b).
 
 
 17
 * Ellis argues that he filed with an "appropriate federal agency" by filing with the Oregon National Guard. He points to communications in January-February 1992 with the Oregon National Guard and contends that the Oregon National Guard is a federal agency since it supervises National Guard members who act as federal employees and who are "recognized by" the United States. He also submits that when, as here, a claimant presents an FTCA administrative claim to a government agency other than the "appropriate federal agency," a claimant meets the presentment requirements where transfer to the proper agency can be accomplished.
 
 
 18
 We disagree. The Oregon National Guard is not a federal agency; rather, it is an agency of the State of Oregon. New Jersey Air Nat. Guard v. Fed. Labor Rel. Authority, 677 F.2d 276, 279 (3d Cir.1982), cert. denied, 459 U.S. 988 (1983); ORS 396.105(1)(2). The fact that the Oregon National Guard supervises federal employees or other employees "recognized by" the federal government does not make it a federal agency. Similarly, the fact that after Ellis contacted the Oregon National Guard, the Department of the Army advised his counsel how to file an FTCA claim, neither shows that the Oregon National Guard was an "agent of" the Department of the Army, as Ellis contends, nor that his claim was properly filed with that agency.
 
 
 19
 Ellis suggests that the claim he did file with the Oregon National Guard suffices because federal regulations oblige a federal agency which is an inappropriate federal agency to transfer a FTCA claim to the "appropriate federal agency." However, Ellis did not file with the wrong federal agency; he filed with a state agency, and he points to no requirement that state agencies transfer inappropriately-filed FTCA administrative claims to the "appropriate federal agency." Therefore, his reliance on Bukala v. United States, 727 F.Supp. 382, 384 (N.D.Ill.1989) is misplaced.
 
 B
 
 20
 Alternatively, Ellis argues that even if the Second Amended Complaint were untimely, the court nevertheless had subject matter jurisdiction because he initiated an action after the Government's March 5, 1993, denial of his claim. We cannot agree.
 
 
 21
 The district court did not err in finding that Ellis's filing of a Motion to Change Caption on April 21, 1993, did not constitute the institution of "an action" as required by Sec. 2675(a). McNeil v. United States, --- U.S. ----, 113 S.Ct. 1980 (1993); Sparrow v. United States Postal Service, 825 F.Supp. 252 (E.D.Cal.1993); Filaski v. United States, 776 F.Supp. 115, 118 (E.D.N.Y.1991). Ellis did not file either a new complaint or a proposed amended complaint along with the motion, nor did the motion have any substantive content. It ostensibly sought to "add" the United States Government as a defendant in place of the Oregon National Guard, but the United States was already named as a party and the Oregon National Guard was not. Thus, at most, the motion sought to remove the National Guard from the caption.
 
 
 22
 Therefore, the district court did not err in concluding that Ellis filed his Second Amended Complaint too early and filed his Third Amended Complaint too late under 28 U.S.C. Sec. 2401(b). This deprived the district court of subject matter jurisdiction over Ellis's FTCA claim against the Government.
 
 
 23
 Each side is to bear its own costs of appeal.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we conclude that the Act applies, we do not need to consider Ellis's further argument that Hanson must have exercised due care toward him as a trespasser