116 P.3d 902 (2005)
201 Or. App. 1
John P. LIBERTY, Appellant,
v.
STATE of Oregon, DEPARTMENT OF TRANSPORTATION, Respondent, and
County of Tillamook, Defendant.
Nicklaus A. Graham, Appellant,
v.
State of Oregon, Department of Transportation, and
Parks and Recreation Department, Respondents.
01-2082, 02-2066; A120225 (Control), A120226.
Court of Appeals of Oregon, En Banc.
Argued and Submitted October 7, 2004.
Resubmitted June 15, 2005.
Decided July 20, 2005.
*903 Brian Richard Whitehead, Salem, argued the cause for appellants. On the briefs was John M. Hoadley.
Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Before BREWER, Chief Judge, and EDMONDS, LANDAU, HASELTON, ARMSTRONG, LINDER, WOLLHEIM, SCHUMAN, ORTEGA, and ROSENBLUM,[*] Judges.
Resubmitted En Banc June 15, 2005.
LANDAU, J.
ORS 105.682 provides that, when an owner of land permits any person to use the land for "recreational purposes," the owner is not liable for personal injury, death, or property damage that arises out of the use of the land for such purposes. At issue in this case is the scope of that statutory immunity.
The owner of landthe statepermitted plaintiffs to use its land for access to an adjacent parcel of privately owned land, where plaintiffs went swimming. On the way back from their recreational activity, while on the state's land, plaintiffs were injured. They initiated actions for personal injury against the state, which were later consolidated. The state invoked the immunity conferred by ORS 105.682, arguing that plaintiffs, by using the state's land to access the swimming area located on the adjacent parcel of private property, used the land for recreational purposes. Plaintiffs argued that ORS 105.682 does not apply because they used the state's land not for recreational purposes, but merely for access to another parcel of land that they intended to use for recreational purposes. The trial court concluded that, as a matter of law, such access to other lands for recreational purposes is *904 itself a "recreational purpose" within the meaning of the statute. We agree and affirm.
The relevant facts are not in dispute. Willamette Industries and Kenneth Fan Rad own property on the north side of a portion of the Wilson River known as the "Fisherman's Bridge" area. That property includes a "beach" area that both owners permit the public to use for swimming, fishing, and other recreational purposes. The state owns land on the opposite side of the river, which runs parallel to state Highway 6. The state has created a paved turnout area at the side of the highway and an "asphaltic concrete" path that runs from the turnout area along the highway for a short distance before veering down a short but steep vegetated slope to a footbridge that crosses the Wilson River and leads to the private beach area. According to the state, the path is "a walkway for recreational users of the Wilson River that allows them access to the bridge." The state does not charge for the use of the path. A map of the area, based on a hand-drawn exhibitnot drawn to scaleis as follows:

Plaintiffs and their families drove down Highway 6, parked in the paved turnout area, walked down the asphaltic concrete path along the highway and down to the footbridge. They crossed the footbridge and entered the beach area of the private land on the other side of the river, where they swam and played on the beach. When it was time to leave, plaintiffs and their families left the private property, crossed the footbridge, and followed the state's asphaltic concrete path back to the highway. At the top of the path, the pavement broke, and plaintiffs fell down the slope approximately 40 feet, injuring themselves in the fall.
Plaintiffs initiated personal injury actions against the state, alleging that the state was negligent in maintaining the asphaltic concrete path. The state answered, asserting that it is immune pursuant to ORS 105.682, and eventually moved for summary judgment on the same ground. In support of its motion, the state argued that ORS 105.682 confers immunity when a person enters land for a recreational purpose. According to the state, when plaintiffs used the state-owned asphaltic concrete path, it was for the recreational purpose of obtaining access to the beach area. Plaintiffs responded that, at the moment that they were injured on the state's land, they were not using that land for recreational purposes; rather, they were using it to gain egress from the privately owned recreational land across the river. Using the state's land for mere access to and from another parcel, they argued, was not using the state's land for recreational purposes, *905 regardless of what they ultimately did on the other parcel.
The trial court granted the state's motion. According to the trial court, "[c]learly, the legislature intended immunity to apply to contiguous property. In this case, the contiguous property was the only way in and the only way out of the recreational property."
On appeal, plaintiffs assign error to the trial court's entry of summary judgment in favor of the state. They argue that they "were engaged in a `recreational activity' (swimming) on property contiguous to the property owned by [the state]. The immunity provided by ORS 105.682 applies only to the owner of the land where the recreational use and the injury occurred. It does not provide immunity to contiguous landowners." According to plaintiffs, the only activity that occurred on the state's property was access to and from the footbridge and recreational area located across the river and in private ownership. Mere access, plaintiffs argue, is not a recreational activity. In the alternative, plaintiffs argue that, if ORS 105.682 does apply, the statute violates the remedies clause of Article I, section 10, of the Oregon Constitution.
The state responds with two arguments. First, it argues that we need not determine whether using its property for mere access to another property for recreational purposes is itself a recreational purpose within the meaning of the statute because another statuteORS 105.688provides that the immunity provided in ORS 105.682 applies to any land that is adjacent or contiguous to a body of water. Because the land on which plaintiffs were injured is adjacent or contiguous to a river, the state argues, statutory immunity applies. Second, the state argues that, in any event, ORS 105.682 applies because plaintiffs' use of state land for access to the private recreational property across the river was itself a "recreational purpose" within the meaning of the statute.
The scope of the immunity conferred by ORS 105.682 is a question of statutory construction. We therefore examine the statute, applying the interpretive method described in PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-12, 859 P.2d 1143 (1993), to determine what the legislature most likely intended it to mean.
We begin with an examination of the text of the statute in its context. Id. In doing so, we construe statutory terms in accordance with any definitions that the legislature has supplied; when the legislature has not defined the relevant terms, we generally assume that it intended the ordinary meaning of those terms to apply. Multifoods Specialty Distribution v. McAtee, 333 Or. 629, 635, 43 P.3d 1101 (2002). Also relevant to our examination of the text of the statute is any prior judicial construction of that statute. State v. Stubbs, 193 Or.App. 595, 600, 91 P.3d 774 (2004) (context of a statute includes judicial interpretations of that statute). If our examination of the text in context does not reveal the unambiguous intentions of the legislature, we are permitted to resort to an examination of the legislative history and other aids to construction. PGE, 317 Or. at 611-12, 859 P.2d 1143.
ORS 105.676 declares the state's policy of encouraging owners to make their land available to the public for recreational use:
"[I]t is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes, for woodcutting and for the harvest of special forest products by limiting their liability toward persons entering thereon for such purposes and by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes, woodcutting or the harvest of special forest products."
To give effect to that policy, ORS 105.682 provides a quid pro quo, namely, if owners permit the public to use their land for recreational purposes, the state will confer immunity for any injuries or damages that result from that use:
"[A]n owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes * * * when the owner of land either directly or *906 indirectly permits any person to use the land for recreational purposes[.] The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes[.]"
As we explained in Brewer v. Dept. of Fish and Wildlife, 167 Or.App. 173, 188-89, 2 P.3d 418, rev. den., 334 Or. 693, 56 P.3d 405 (2002), the statute represents a legislative "trade-off":
"The owner of land opened for recreational use in accordance with the Act gives up exclusive enjoyment of the land and, in return, is insulated from certain types of liability for injuries that may occur there. The users of recreational lands opened in accordance with the Act give up their rights to sue land owners for certain types of injuries but gain the benefit of using land for recreation that otherwise would not be available to them."
The immunity conferred by ORS 105.682 applies both to private and to public lands, as long as the conditions of ORS 105.682 itself are satisfied. ORS 105.688 expressly provides that, subject to exceptions not pertinent to this case,
"the immunities provided by ORS 105.682 apply to:
"(a) All public and private lands, including but not limited to lands adjacent or contiguous to any bodies of water, watercourses, or the ocean shore * * *;
"(b) All roads, bodies of water, watercourses, rights of way, buildings, fixtures and structures on the lands described in paragraph (a) of this subsection; and
"(c) All machinery or equipment on the lands described in paragraph (a) of this subsection."
See also Waggoner v. City of Woodburn, 196 Or.App. 715, 718 n. 1, 103 P.3d 648 (2004) ("[T]he statute applies to all real property, whether publicly or privately owned, as long as the other conditions for immunity are satisfied.").
From the wording of the foregoing statutes, this much is clear: The immunity provided by ORS 105.682 applies if two conditions are satisfied. First, the owner of the landwhether public or privatemust have either directly or indirectly permitted any person to use the land for "recreational purposes." Second, personal injury, death, or property damage must have arisen out of the use of that land for such "recreational purposes."
Thus, we reject at the outset the state's suggestion that we need not address whether plaintiffs used the asphaltic concrete path on its land for "recreational purposes" merely because of the location of the land next to a body of water. The wording of the statute and our case law make clear that, although the immunity provided by ORS 105.682 applies to both public and private land, it does so only when the conditions set out in that statute have been satisfied. We turn, then, to the question whether plaintiffs' use of the state's land for access to the beach area located on private land amounted to use of the state's land for "recreational purposes" within the meaning of the statute.
Unfortunately, the statute does not define what "recreational purposes" means. It does tell us what the term "includes." According to ORS 105.672(3), the term "recreational purposes"
"includes, but is not limited to, outdoor activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, nature study, outdoor educational activities, waterskiiing, winter sports, viewing or enjoying historical, archeological, scenic or scientific sites or volunteering for any public purpose project."
To be sure, the definition does not explicitly refer to using a path for access to another property for recreational purposes. And it could be argued that, had the legislature wanted to include such access, it could have said so. Nevertheless, the statute does seem to suggest that the legislature assumed that such access is included.
To begin with, as we have noted, ORS 105.672(3) makes clear that the recreational activities listed in that section are intended to be indicative, not exhaustive. The legislature, in other words, has expressly instructed that its failure to list a particular activity should not be taken as an indication of an intention to exclude it.
*907 More important, the nature of the activities that the legislature did include in the list suggests that the legislature assumed that access to an area for recreational purposes is itself a "recreational purpose" within the meaning of the statute. The statute includes in its list of recreational purposes, for example, such water sports as swimming, boating, and waterskiing. One ordinarily engages in those activities in the water that is adjacent to land that the owner opens to the public. Thus, the statute suggests that, if a person is injured while gaining access to water for the purpose of engaging in any of those activities, the owner of the land by which the person gained access to the water is entitled to the immunity.
That reading of the statute is consistent with the ordinary meaning of the terms. The dictionary defines the term "recreational" as "of or relating to recreation." Webster's Third New Int'l Dictionary 1899 (unabridged ed 2002). "Recreation" is, in turn, defined as "1 a: the act of recreating or the state of being recreated: refreshment of the strength and spirits after toil: DIVERSION, PLAY * * * b: a means of getting diversion or entertainment[.]" Id. The term "purpose" is defined as "1 a: something that one sets before himself as an object to be attained: an end or aim to be kept in view in any plan, measure, exertion, or operation: DESIGN * * * 2: an object, effect, or result aimed at, intended, or attained[.]" Id. at 1847. In light of those definitions, it seems reasonably plausible that, when a person enters land for the purpose of gaining access to another parcel for recreational purposes, the access itself has a recreational purpose in that the end, object, result, or goal of the entry is recreation.
Our opinion in Brewer also seems to suggest that reading of the statute. In that case, we addressed whether the owners of a fish migration dam were entitled to immunity when the plaintiffs' decedents died while swimming in an area of the river below it. The decedents were not injured while on the dam itself or on any other land owned by the defendants. They were injured while in the water. Nevertheless, we concluded that the defendants were entitled to immunity under ORS 105.682. Brewer, 167 Or.App. at 178-79, 2 P.3d 418.
Although the statute does not appear to us to be ambiguous, we have examined the legislative history. See ORS 174.020(1)(b) ("To assist a court in its construction of a statute, a party may offer the legislative history of the statute.). That history, although sparse, appears to confirm what the wording of the statute suggests, andperhaps at least as importantwe have found nothing to the contrary. What is now codified as ORS 105.682 was enacted in 1995, Oregon Laws 1995, chapter 456, section 3, based on an earlier statute, enacted in 1971, Oregon Laws 1971, chapter 780, which in turn was based on a still earlier statute enacted in 1963, Oregon Laws 1963, chapter 524. See generally Conant v. Stroup, 183 Or.App. 270, 276-79, 51 P.3d 1263 (2002), rev dismissed as improvidently allowed, 336 Or. 126, 81 P.3d 709 (2003) (tracing history of the statute). The original 1963 law, introduced as House Bill 1696, provided, in part, that
"when the owner or person in possession of land which may be used for recreational purposes, including but not limited to hunting, fishing, trapping, camping or hiking, has granted permission to any person to enter upon or use the land for recreational purposes, neither the owner nor the person in possession of the land shall be liable for the injury, death, or loss sustained by any person entering upon or using the land for recreational purposes, resulting from the condition, structures or activities on or uses of the land or as a result of an act or omission of the owner or person in possession of the land."
During hearings on HB 1696 before the House Committee on Fish and Game, Louis Norris of the Oregon Farm Bureau Federation testified in support of the bill. According to the minutes, Norris testified that his organization supported the bill because, among other things, "in many cases an individual must cross private land in order to get to public lands; and the potential suit is always there. Such a bill [creating immunity] would relieve the landowner's mind if he allowed this." Minutes, House Committee on *908 Fish and Game, HB 1696, Apr. 10, 1963, 2 (emphasis added). Thus, whatever else may be said about the weight to be ascribed to the testimony of a single nonlegislator, see, e.g., State v. Guzek, 322 Or. 245, 261, 906 P.2d 272 (1995) (cautioning against relying too heavily on the statements of nonlegislator witnesses), the fact remains that the committee was aware of the fact that the bill was viewed as a way of encouraging private land owners to permit their lands to be used as access to public recreational lands. We have found nothing in the enactment history that suggests that the legislature did not share that understanding.
As we have noted, the statute has been amended several times. None of the amendments, however, altered the basic policy of the statute or the basic mechanism for implementing it, that is, trading immunity for public access to land for recreational purposes. The legislative history of those amendments likewise does not suggest that the legislature intended to alter the basic thrust of the law.
In short, the text in context, the judicial construction of that text, and the legislative history suggest that the legislature most likely intended ORS 105.682 to apply when owners of land permit members of the public to use their property as a means of access to other properties for recreational purposes. In our view, the legislature most likely intended that the use of land for such access to other property for recreational purposes is itself a "recreational purpose."
Plaintiffs complain that reading the statutory term "recreational purposes" to include using land merely for access to other land for recreational purposes has the unlikelyindeed, according to plaintiffs, the "absurd"consequence of extending statutory immunity to any public highway that is used for access to recreational areas. Plaintiffs are mistaken.
To begin with, any such consequence is not a result of our reading of the statute. Indeed, it would seem to flow from plaintiffs' reading of the statute as well. Even if "recreational purpose" were limited to the activities listed in ORS 105.672(5), that list includes "viewing or enjoying historical, archeological, scenic or scientific sites," all of which may be accomplished from motor vehicles on public roadways. The legislature, in fact, has declared that it is in the public interest to develop a "system of scenic roads to enhance recreational travel and sightseeing." ORS 390.010(3)(d). Thus, even under plaintiffs' proposed reading of the statute, using a state highway for recreational purposes would trigger the immunity provided in ORS 105.682.
As it turns out, however, the legislature apparently anticipated such concerns and expressly provided that the Oregon Transportation Commission and the Department of Transportation are responsible for the safe design, construction, and maintenance of the state's highways. ORS 366.205(1) provides, in part, that the Oregon Transportation Commission "has general supervision and control over all matters pertaining to the selection, establishment, location, construction, improvement, maintenance, operation and administration of state highways." Similarly, ORS 366.290 provides, in part, that "the construction, improvement, maintenance and repair of such roads shall be under the jurisdiction of the [D]epartment [of Transportation]." In Little v. Wimmer, 303 Or. 580, 585-86, 739 P.2d 564 (1987), the Oregon Supreme Court construed those statutes to impose on the commission and the department the obligation of "continuous `supervision and control' of maintenance and improvement of the state's highways," and held that the negligent performance of that obligation may result in liability in negligence.
Thus, whatever might be said of the broad scope of the immunity generally conferred on public owners of property by ORS 105.682, the fact remains that the legislature has more specifically provided that, where state highways are concerned, the State Transportation Commission and Department of Transportation remain accountable for the negligent performance of their statutory obligations. See, e.g., Bobo v. Kulongoski, 338 Or. 111, 119, 107 P.3d 18 (2005) (where statutes conflict, the more specific controls).
We therefore conclude that the trial court correctly determined that, when plaintiffs used the state's asphaltic concrete path for the purpose of gaining access to the private *909 recreational area located on the opposite side of the Wilson River, they used the state's land for "recreational purposes" within the meaning of the statute. Accordingly, the state is immune from liability under ORS 105.682 for any injuries that arose out of their use of the land for that purpose.
That leaves plaintiffs' argument that, if ORS 105.682 does apply, it violates the remedies clause of Article I, section 10, of the Oregon Constitution. We rejected precisely the same argument in Brewer, 167 Or.App. at 190-91, 2 P.3d 418, and plaintiffs do not explain why we should reconsider our decision in that case. We reject plaintiffs' constitutional argument without further discussion.
Affirmed.
NOTES
[*] Rosenblum, J., vice Leeson, J. pro tempore.