**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMILY JOHNSON,
  *Plaintiff-Appellant*,

v.

SCOTT GIBSON;
ROBERT STILLSON,
  *Defendants-Appellees*.

No. 13-35087

D.C. No.
3:11-cv-00432-AC

ORDER CERTIFYING
QUESTIONS TO THE
OREGON SUPREME COURT

Appeal from the United States District Court
for the District of Oregon
John V. Acosta, Magistrate Judge, Presiding

Argued and Submitted
March 4, 2015—Portland, Oregon

Filed April 21, 2015

Before: Raymond C. Fisher, Richard A. Paez
and Sandra S. Ikuta, Circuit Judges.

# SUMMARY[*]

## Certification to Oregon Supreme Court

The panel certified two questions to the Supreme Court of Oregon:

1. Whether individual employees responsible for repairing, maintaining and operating improvements on City-owned recreational land made available to the public for recreational purposes are "owners" of land, as that term is defined in the Oregon Public Use of Lands Act, ORS 105.672 to 105.700, and therefore immune from liability for their negligence?

2. If such employees are "owners" under the Public Use of Lands Act, whether the Act, as applied to them, violates the remedy clause of the Oregon Constitution, Article I, section 10?

## COUNSEL

Thane W. Tienson and Christine N. Moore (argued), Landye Bennett Blumstein LLP, Portland, Oregon, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Harry Auerbach, Chief Deputy City Attorney, Office of City Attorney, Portland, Oregon, for Defendants-Appellees.

---

**ORDER**

Pursuant to the parties' joint motion, we certify two questions to the Oregon Supreme Court. Plaintiff Emily Johnson filed this state law negligence action against Scott Gibson and Robert Stillson, two park maintenance employees of the City of Portland, after she fell and was injured while jogging in Portland's Tom McCall Waterfront Park. This appeal raises two questions that may be determinative of Johnson's cause of action: (1) whether city maintenance workers are "owners" of the park and hence entitled to immunity under the Oregon Public Use of Lands Act, ORS 105.672 to 105.700; and (2), if so, whether the Public Use of Lands Act violates the remedy clause, Art. I, section 10, of the Oregon Constitution. Because it appears to this court that there is no controlling precedent on these questions in the decisions of the Oregon Supreme Court and the Oregon Court of Appeals, we respectfully certify them to the Oregon Supreme Court.

## I.  Factual and Procedural History

The following facts are undisputed. *See W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364–65, 811 P.2d 627, 630 (1991). Waterfront Park is owned by the City of Portland and maintained through the City's Parks and Recreation Bureau. It is generally open to the public for recreational use.

At all relevant times, defendant Scott Gibson was an employee of the City, employed as a park technician for the Parks and Recreation Bureau.  As part of his duties, Gibson repaired and performed maintenance in City parks, including Waterfront Park.  Waterfront Park was Gibson's primary responsibility.  On July 15, 2009, while working at Waterfront Park, Gibson noticed a broken sprinkler head located near the Salmon Springs Fountain.  To diagnose the problem with the sprinkler, Gibson dug a hole approximately a foot deep and 18 inches wide.  After determining that the sprinkler head would have to be replaced with a part he did not have in stock at the location, Gibson placed a single cone on top of the sprinkler head to serve as a warning and left the site.  At the time, Gibson expected to return with a replacement part the next day, but he did not do so.  Gibson would have used a more permanent barricade to mark the hole if he had anticipated the delay in completing the repair.

At all relevant times, defendant Robert Stillson was an employee of the City working as a maintenance supervisor with the Parks and Recreation Bureau.  As part of his duties, Stillson supervised a crew of park maintenance workers, including Gibson.  Stillson testified that workers had three means for securing a temporary hole – a cone, a piece of plywood to cover the hole and a barricade, such as a sawhorse.  He testified that the hole created by Gibson should have been marked at least by a cone.  Stillson provided his employees no formal training about how best to mark a hazard like the one Gibson created on July 15.

In the middle of the day on July 16, 2009, plaintiff Emily Johnson was jogging in Waterfront Park when she stepped in the hole that Gibson had created and fell.  The hole was not marked, by a cone or otherwise, at the time of Johnson's

accident. Johnson alleges she suffered a severe and permanent disabling injury from the fall.

In April 2011, Johnson filed a civil complaint against Gibson and Stillson in the United States District Court for the District of Oregon. Her complaint asserts a single claim of negligence under Oregon law. Federal jurisdiction arises from the parties' diversity of citizenship. *See* 28 U.S.C. § 1332.

In April 2012, the defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. They argued they were immune from liability for Johnson's state negligence claim under the Public Use of Lands Act, ORS 105.672 to 105.700. That Act provides immunity from negligence liability to an "owner" that makes its land available to the public for recreational use:

> an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, woodcutting or the harvest of special forest products.

ORS 105.682(1) (2009). It further defines an "owner" as "the possessor of any interest in any land, including but not limited to possession of a fee title. 'Owner' includes a tenant, lessee, occupant or other person in possession of the land." ORS 105.672(4) (2009).

The defendants argued they were "owners" of Waterfront Park for purposes of the Public Use of Lands Act because they were "responsible for the maintenance, repair and operation of Waterfront Park." In making this argument, they relied on two decisions by the Oregon Court of Appeals.

In the first of these decisions, *Denton v. L.W. Vail Co.*, 23 Or. App. 28, 541 P.2d 511 (1975), the plaintiff was injured on land owned by the federal Bureau of Land Management (BLM) when he rode his motorcycle into a barbed wire fence stretched across a new section of highway that was under construction. *See id.* at 30, 541 P.2d at 512. The plaintiff brought a negligence action against the state Department of Transportation, the L.W. Vail Co. (the construction contractor), and the Peters and Wood Company (the subcontractor doing the grading work), alleging they were negligent in placing strands of barbed wire across the road knowing that it was used by vehicular traffic and without posting warnings. *See id.* at 31, 541 P.2d at 512–13. The court held that the defendant contractors were "persons in possession of the land," and hence were immune under the Public Use of Lands Act. *Id.* at 37, 541 P.2d at 515.

In the second of these decisions, *Brewer v. Department of Fish & Wildlife*, 167 Or. App. 173, 2 P.3d 418 (2000), a mother and daughter died while swimming in a creek below a fish migration dam owned and maintained by various defendants. *See id.* at 176, 2 P.3d at 420. The plaintiffs filed a wrongful death action against numerous state agencies and the Swackhammer Ditch Improvement District, alleging that the defendants were negligent because the dam was built in such a manner that it created a dangerous undertow. *See id.* at 176, 2 P.3d at 420–21. Relying on *Denton*, the court held that two of the defendants – the Oregon Department of Fish

and Wildlife (ODFW) and the Swackhammer Ditch Improvement District – were "owners," and hence entitled to immunity, under the Public Use of Lands Act because they maintained and operated the dam:

> In *Denton*, we found that those who were constructing improvements on land were "owners" within the meaning of the definition found in the Act. If those who merely construct improvements on land qualify as owners, certainly those who maintain and operate improvements on land also fall within the scope of that definition. The trial court correctly concluded that ODFW and Swackhammer come within the ambit of the Act for purposes of immunity.

*Id.* at 179, 2 P.3d at 422.

The defendants here contended that *Denton* and especially *Brewer* were controlling on the issue of immunity. They argued they were entitled to immunity because, "[a]s *Brewer* makes clear, those who maintain and operate improvements on the land fall within the definition of 'owners' for purposes of the Public Use of Lands Act."

The defendants also maintained that granting them immunity under the Public Use of Lands Act would not violate the remedy clause of the Oregon Constitution. That clause states that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation," Or. Const. art. I, § 10, and is designed to preserve common law rights of action that existed when the Oregon

Constitution was adopted in 1857.  *See Howell v. Boyle*, 353 Or. 359, 369–70, 298 P.3d 1, 6–7 (2013).

The defendants' remedy clause argument once again relied on *Brewer*.  After reviewing Oregon case law, *Brewer* concluded that the state legislature could abolish a common law right of action that existed in 1857 so long as the legislative enactment provided a countervailing benefit to those deprived of their common law cause of action.  The court explained that

> the Oregon Supreme Court's case law appears to recognize the legislature's ability to strike some sort of balance between competing interests by redefining rights, including rights of action, even when such a redefinition alters or abolishes a remedy under some circumstances.  The key would appear to be that there indeed has to be some sort of "balance," or legitimate trade-off, involved.

*Brewer*, 167 Or. App. at 189–90, 2 P.3d at 428.  The court held that the Public Use of Lands Act represented a permissible exercise of legislative authority under this detriment/benefit calculus:

> The trade-off represented by this policy is manifest.  The owner of land opened for recreational use in accordance with the Act gives up exclusive enjoyment of the land and, in return, is insulated from certain types of liability for injuries that may occur there.  The users of recreational lands opened in accordance with the Act give up their rights to

sue land owners for certain types of injuries but gain the benefit of using land for recreation that otherwise would not be available to them.

*Id.* at 188–89, 2 P.3d at 427.  The court held that the Act "strikes an acceptable balance, by conferring certain benefits and certain detriments on both the landowners involved, and on the recreational users of that land," and therefore "does not violate Article I, section 10, of the Oregon Constitution."  *Id.* at 190–91, 2 P.3d at 428.

In opposing summary judgment, Johnson contested both prongs of the defendants' arguments.  First, she disputed the defendants' contention that they were "owners" under the Public Use of Lands Act.  She maintained that the City of Portland was the sole owner of Waterfront Park.  She argued that *Denton* and *Brewer* were distinguishable because they involved entity defendants rather than individuals, and because the defendants in *Denton* and *Brewer* exercised greater control over the premises than Stillson and Gibson did here.  And she argued that treating Stillson and Gibson as "owners" of the park was contrary to the plain meaning of the statute.

Second, Johnson argued that, if the defendants were entitled to immunity under the Public Use of Lands Act, then that law, as applied to this case, would violate the remedy clause.  She acknowledged *Brewer*'s holding, but argued that *Brewer* was abrogated by the Oregon Supreme Court's subsequent decision in *Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 23 P.3d 333 (2001).  *Smothers* "engaged in a wholesale reevaluation of [the court's] remedy clause jurisprudence . . . and established a new method of analysis

of claims arising under it." *Howell*, 353 Or. at 369, 298 P.3d at 6. Under this new method of analysis:

> in analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury.

*Smothers*, 332 Or. at 124, 23 P.3d at 356–57. *Smothers* also expressly rejected *Brewer*'s understanding that the legislature could altogether abolish a cause of action that existed at common law without providing a substitute remedy, "disavow[ing]" the court's holdings "that the legislature can abolish or alter absolute rights respecting person, property, or reputation that existed when the Oregon Constitution was drafted without violating the remedy clause." *Id.* at 119, 23 P.3d at 353.

The district court rejected Johnson's contentions, found the defendants' arguments persuasive and granted the defendants' motion for summary judgment. *See Johnson v. Gibson*, 918 F. Supp. 2d 1075 (D. Or. 2013). It first held that Stillson and Gibson were "owners" for purposes of the Public

Use of Lands Act because they "were responsible for the maintenance and/or repair of the sprinkler system in the Park." *Id.* at 1085. In the district court's view, this placed the defendants "in the same position as Swackhammer, who maintained and operated the dam" in *Brewer*. *Id.*

The court also agreed with the defendants that granting them immunity under the Public Use of Lands Act would not violate the remedy clause of the Oregon Constitution. *See id.* at 1086–88. The court concluded that *Brewer* was directly on point and, significantly, that *Brewer* remained good law. With respect to the latter holding, the court recognized that *Brewer* and *Smothers* were in some tension. It also recognized that the Oregon Court of Appeals, in *Schlesinger v. City of Portland*, 200 Or. App. 593, 600 n.4, 116 P.3d 239, 243–44 n.4 (2005), had called *Brewer*'s continuing validity into question. *See Johnson*, 918 F. Supp. 2d at 1086–87. The court concluded, however, that *Brewer* retained its precedential value because the Oregon Supreme Court had not specifically disavowed *Brewer* in subsequent decisions and had denied review in *Brewer* itself, even after *Smothers* was decided. The court reasoned:

> Had the Supreme Court been concerned about the ultimate rulings in *Brewer*, including the detriment/benefit calculus applied to Swackhammer to support the finding that the Act, as applied to a private landowner, did not violate the [Remedy Clause], it clearly could have addressed those rulings in *Smothers* or *Storm* [*v. McClung*, 334 Or. 210, 47 P.3d 476 (2002)] or by granting review in the appeal of *Brewer*. The fact that the Oregon Supreme Court has seen fit to allow the rulings in

> *Brewer* to remain unquestioned in at least two
> cases in which it expressed concern with some
> of the tangential issues addressed in *Brewer*,
> and denied review of the ultimate rulings in
> *Brewer* after discussing the Remedy Clause in
> detail, supports a conclusion that the
> detriment/benefit calculus on which the
> *Brewer* court relied in finding that the
> application of the Act to a private landowner
> does not violate the Remedy Clause is still
> good law.

*Id.* at 1088.

Johnson timely appealed the adverse judgment, and in January 2014, the parties filed a joint motion to certify two questions to the Oregon Supreme Court:

> 1. Whether individual employees responsible
>    for repairing, maintaining, and operating
>    improvements on City-owned recreational
>    land made available to the public for
>    recreational purposes can each properly be
>    considered an "owner" of land, as that
>    term is defined in the Oregon Public Use
>    of Lands Act, Oregon Revised Statutes
>    §§ 105.672 to 105.696, and therefore
>    immune from actions against them for
>    their own negligence?
>
> 2. If employees can be considered to be
>    "owners" under the Public Use of Lands
>    Act, does the Act, as applied to them[,]

> violate the Remedy Clause of the Oregon Constitution, Article I, section 10?

The parties argued that "[t]his case raises important questions of Oregon statutory and constitutional law that are unresolved by previous decisions of the Supreme Court or intermediate appellate courts of Oregon" and "determinative of the case before this Court." They asserted that "[t]his case reduces to the issues left unresolved in *Schlesinger*, namely whether the Oregon Court of Appeals was correct in its holdings in *Brewer*, that the Recreational Use of Lands Statute immunizes those who maintain the land on behalf of the owner, and that the Oregon Constitution permits it to do so."

## II. Grounds for Certification

Under Oregon law:

> The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, a panel of the Bankruptcy Appellate Panel Service or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state.

ORS 28.200. *See W. Helicopter Servs.*, 311 Or. at 364, 811 P.2d at 630; *Fields v. Legacy Health Sys.*, 413 F.3d 943, 958 (9th Cir. 2005). We conclude that this standard is satisfied here.

First, we are aware of no controlling precedent addressing whether an individual employee responsible for repairing, maintaining and operating improvements on City-owned recreational land made available to the public for recreational purposes can properly be considered an "owner" of land as that term is defined in the Oregon Public Use of Lands Act. *Brewer* held that "those who maintain and operate improvements on land . . . fall within the scope of [the statutory] definition" of owner. 167 Or. App. at 179, 2 P.3d at 422. The defendants here, however, may not be comparable to the Swackhammer Ditch Improvement District. They are individual city employees, not an entity, and they may not exercise the same degree of control over the park that Swackhammer exercised over the dam. Under Oregon law, moreover, "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *State v. Gaines*, 346 Or. 160, 171, 206 P.3d 1042, 1050 (2009) (internal quotation marks omitted). Thus, the first step in interpreting a statute is "an examination of text and context." *Id.* Here, neither the Oregon Supreme Court nor the Oregon Court of Appeals has carefully examined the operative words of ORS 105.672(4) – "owner," "occupant" and "person in possession" – or applied them to a city maintenance worker.

Second, we likewise are aware of no controlling precedent addressing whether the Public Use of Lands Act violates the remedy clause of the Oregon Constitution as applied to the owners of public land. Although *Brewer* is on

point, neither the Oregon Supreme Court nor the Oregon Court of Appeals has yet addressed whether *Brewer* has been abrogated by *Smothers*. *Schlesinger* called *Brewer* into question without deciding the issue. The Oregon Supreme Court denied review in *Brewer*, but this is not dispositive. *See 1000 Friends of Or. v. Bd. of Cnty. Comm'rs, Benton Cnty.*, 284 Or. 41, 45, 584 P.2d 1371, 1373 (1978) (explaining that denial of review by the Oregon Supreme Court "may not be taken as expressing even a slight sign that this court approves the decision or the opinion of the Court of Appeals"); *accord In re Marriage of Bolte*, 349 Or. 289, 294, 243 P.3d 1187, 1189 (2010) ("[A] denial of review carries no implication that the decision or the opinion of the Court of Appeals was correct." (quoting *1000 Friends of Oregon*, 284 Or. at 44, 584 P.2d at 1372)). Another Oregon Court of Appeals decision applied *Brewer*, but was later reversed on other grounds, and thus does not constitute controlling precedent on the continuing validity of *Brewer*. *See Liberty v. State, Dep't of Transp.*, 200 Or. App. 607, 619–20, 116 P.3d 902, 909, *opinion adhered to as modified on reconsideration*, 202 Or. App. 355, 122 P.3d 95 (2005), *and rev'd*, 342 Or. 11, 148 P.3d 909 (2006). Accordingly, certification is appropriate to determine whether *Brewer* remains good law and, if not, whether the Public Use of Lands Act violates the remedy clause of the Oregon Constitution as applied to Johnson's claim.

## III.  Questions Certified

We respectfully certify the following questions to the Oregon Supreme Court:

> 1. Whether individual employees responsible for repairing, maintaining and operating

improvements on City-owned recreational land made available to the public for recreational purposes are "owners" of land, as that term is defined in the Oregon Public Use of Lands Act, ORS 105.672 to 105.700, and therefore immune from liability for their negligence?

2.  If such employees are "owners" under the Public Use of Lands Act, whether the Act, as applied to them, violates the remedy clause of the Oregon Constitution, Article I, section 10?

We respectfully ask the Oregon Supreme Court to exercise its discretionary authority to accept and decide these questions.  Our phrasing of the questions should not restrict the court's consideration of the issues involved.  The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties. *See Howell v. Boyle*, 673 F.3d 1054, 1058 (9th Cir. 2011); *W. Helicopter Servs.*, 311 Or. at 370–71, 811 P.2d at 633–34. We agree to abide by the decision of the Oregon Supreme Court.  If the court decides that the questions presented are inappropriate for certification, or if it declines the certification for any other reason, we request that it so state, and we will resolve the question according to our best understanding of Oregon law.

The Clerk of this court shall file a certified copy of this order with the Oregon Supreme Court under ORS 28.215. This appeal is withdrawn from submission and will be submitted following receipt of the Oregon Supreme Court's opinion on the certified questions or notification that it

declines to answer the certified questions.  The panel shall retain jurisdiction over further proceedings in this court.  The parties shall notify the Clerk of this court within one week after the Oregon Supreme Court accepts or rejects certification.  In the event the Oregon Supreme Court grants certification, the parties shall notify the Clerk within one week after the court renders its opinion.

**CERTIFICATION   REQUESTED;   SUBMISSION VACATED.**

_____

Richard A. Paez
United States Circuit Judge, Presiding