*361 LANDAU, J.
This case is before the court on certified questions of Oregon law from the United States Court of Appeals for the Ninth Circuit (Ninth Circuit). See generally ORS 28.200 to 28.255 (granting authority to answer certified questions and describing procedure). The questions arise out of an action for personal injury brought in federal district court against defendant Boyle and his employer, the City of Beaverton, for injuries that plaintiff suffered in an automobile collision with a police car that defendant Boyle drove. A jury found that plaintiff and Boyle were equally at fault and that plaintiff’s damages totaled approximately $1 million. The trial court reduced the award by half, in accordance with the jury’s findings of comparative fault. Defendants then moved to reduce the award further, to the $200,000 limit of the Oregon Tort Claims Act in existence at the time. The trial court denied the motion, concluding that the application of the statutory limitation would violate the remedy clause of Article I, section 10, of the Oregon Constitution.
Defendants appealed, and the Ninth Circuit certified the following questions to this court:
“1. Is [plaintiff’s] negligence action constitutionally protected under the Oregon [C]onstitution’s remedy clause, Or. Const, art. I, § 10, irrespective of the jury’s finding of comparative negligence? To what extent, if any, do the common[-]law defenses to contributory negligence of last clear chance, the emergency doctrine, and gross negligence [a]ffect this determination?
“2. If [plaintiff’s] action is protected, is $200,000 an unconstitutional emasculated remedy despite the jury’s finding of comparative negligence? To what extent, if any, do the common[-]law defenses to contributory negligence of last clear chance, the emergency doctrine, and gross negligence [a]ffect this determination?”
We address the second question only, because its answer is dispositive. Even assuming for the sake of argument that, under the circumstances of this case, plaintiff’s negligence action is constitutionally protected by Article I, section 10, the $200,000 limitation on her recovery is constitutionally permissible. Under this court’s case law, the constitution *362 requires that any remedy that remains after the imposition of a modern limitation on it be “substantial.” In this case, the $200,000 judgment that plaintiff received satisfies that constitutional requirement.
I. BACKGROUND
To provide context for the Ninth Circuit’s questions and our answer, we begin with a more detailed description of the facts and the procedural history of the case. In 2007, defendant Boyle, a City of Beaverton police officer, drove a motor vehicle west on the Tualatin Valley Highway. He struck plaintiff as she attempted to cross the highway at an unmarked crosswalk. As a result of that incident, plaintiff suffered serious injuries leading to permanent disability and significant medical expenses. Plaintiff brought a diversity action in the United States District Court for the District of Oregon, naming as defendants both Boyle and his employer, the City of Beaverton. Plaintiff alleged $4,779,529.25 in economic damages and up to $1 million in noneconomic damages.
Defendants answered, alleging that, among other things, plaintiff’s injuries were caused by her own negligence because she had been “darting” across an unsafe intersection late at night while wearing dark clothes. In addition, defendants alleged that plaintiff’s claims are subject to the “conditions, limitations, procedures and immunities contained in the Oregon Tort Claims Act.” Specifically, defendants alleged that, because Boyle had acted within the course and scope of his employment, plaintiff could not maintain a claim against him and, under ORS 30.265(1),[1] was required instead to substitute the City of Beaverton. They also alleged that, in any event, to the extent that they are found liable, such liability is limited by the version of the Oregon Tort Claims Act then in effect to a maximum of $200,000. ORS 31.270(l)(b) (2007).[2]
*363 Defendants moved to dismiss Boyle from the case pursuant to ORS 30.265(1). Plaintiff opposed the motion on the ground that, under this court’s decision in Clarke v. OHSU, 343 Or 581, 175 P3d 418 (2007), to preclude the action against Boyle would violate plaintiff’s right to a remedy guaranteed by Article I, section 10, of the Oregon Constitution. The trial court agreed and denied defendants’ motion.
The case was tried to a jury, which determined that plaintiff and Boyle each were 50 percent at fault. The jury further found that plaintiff had incurred $765,000 in economic damages and $250,000 in noneconomic damages, for a total of $1,015,000. In accordance with the jury’s findings of comparative fault, the court reduced plaintiff’s damages by 50 percent and entered judgment against defendants for $382,500 in economic damages and $125,000 in noneconomic damages, for a total of $507,500.
Defendants then moved to amend the judgment to reduce the amount of damages to the $200,000 statutory limit. Plaintiff opposed the motion on the ground that applying the Oregon Tort Claims Act limit to this case “emasculated” her common-law remedy against defendants in violation of the remedy clause of Article I, section 10, of the Oregon Constitution. The trial court agreed with plaintiff and denied defendants’ motion.
Defendants appealed to the Ninth Circuit, contending that the trial court had erred in denying their motion to reduce the judgment to the limits provided in ORS 31.270(1) (b) (2007). They advanced two arguments in support of that contention. First, they argued that, under this court’s decision in Lawson v. Hoke, 339 Or 253, 119 P3d 210 (2005), Article I, section 10, does not even apply because plaintiff— having been found 50 percent at fault — would not have been able to recover anything under common-law negligence as it existed at the time of the framing of the Oregon Constitution. According to defendants, under the law prevailing at that time, contributory negligence in any amount on the part of the plaintiff operated as a complete bar to recovery. Second, they argued that, even if Article I, section 10, otherwise *364 applies, the $200,000 cap is a constitutionally adequate remedy under this court’s recent precedents.
In response to defendants’ first argument, plaintiff asserted that whether her fault would have precluded recovery under the law that existed at the time of the adoption of the state constitution is irrelevant. The sole and determinative issue, she argued, is whether she could have stated a claim for negligence, not whether the law at the time would have entitled her to a remedy. In the alternative, plaintiff argued that, even if it were appropriate to take into account defenses to a negligence action that would have applied in 1857, such as contributory negligence, the fact remains that the law recognized exceptions to that defense in cases of gross negligence, conditions of emergency, and circumstances in which the defendant had the “last clear chance” to avoid the injury. In response to defendants’ second argument, plaintiff asserted that the limits established in ORS 31.270(l)(b) (2007) failed to provide a constitutionally adequate remedy because that statute indisputably prevented her from recovering the full amount of her damages.
Following the filing of the parties’ briefing on the foregoing points, the Ninth Circuit entered an order certifying the two questions to which we have referred. This court accepted the certified questions and allowed further briefing. Before this court, the parties essentially reprise the arguments that they made to the Ninth Circuit.
II. ANALYSIS
Article I, section 10, of the Oregon Constitution provides, in part, that “every man shall have remedy by due course of law for injury done him in his person, property, or reputation.” The provision is commonly referred to as the state constitutional “remedy clause.” See, e.g., Juarez v. Windsor Rock Products, Inc., 341 Or 160, 164, 144 P3d 211 (2006) (referring to Article I, section 10, as containing a “remedy clause”).
*365 A. Prior Case Law on the Constitutional Adequacy of a Remedy
This court has confronted constitutional challenges to various types of statutory remedy limitations in several previous cases, dating back at least to its 1901 decision in Mattson v. Astoria, 39 Or 577, 65 P 1066 (1901). In that case, the plaintiff initiated an action against the City of Astoria for injuries that were said to have been caused by the city’s negligent maintenance of its public streets. The city invoked a provision of its charter, adopted pursuant to legislative authorization, exempting it and any of its council members from liability for such negligence. The lower court held the charter provision unconstitutional, and this court affirmed. The court explained that it is “unquestioned” that “it is within the power of a legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair.” Id. at 579. The injured party, the court explained, “is not wholly without remedy,” because he or she may proceed against city officers or employees who have been delegated the duty of keeping the streets in repair. Id. In contrast, the court continued, the City of Astoria’s charter purported to exempt both the city and its officers and employees, thus amounting to “a denial of any remedy.” Id. at 580. Under Article I, section 10, the court explained, the legislature cannot “deny a remedy entirely.” Id.
In Evanhoff v. State Industrial Acc. Com., 78 Or 503, 154 P 106 (1915), the court took a similar approach to the adequacy of remedies under Article I, section 10. In that case, the plaintiff challenged the constitutionality of an early version of this state’s workers’ compensation legislation. Among other things, he contended that it violated the remedy clause of Article I, section 10. The court dismissed that particular argument summarily, noting that, at that time, the workers’ compensation system was entirely voluntary. Id. at 517. Then, in dictum, the court went on to observe:
“Many of the states for many years have had statutes fixing the liability with precision in cases of death, and in no instance has any court held such statute invalid. And why a *366 statute cannot fix with certainty the damages to be allowed in case of the loss of an arm, leg, eye or other injury is not perceived, and counsel fail to state any legal or constitutional objection thereto.”
Id. at 518 (quoting Hawkins v. Bleakley, 220 Fed 378, 381 (SD Iowa 1914)).
The following year, in Humphry v. Portland, 79 Or 430, 154 P 897 (1916), the court more explicitly cited Mattson for the proposition that Article I, section 10, prohibits only legislation that leaves a plaintiff wholly without a remedy. Under that constitutional provision, the court stated, “a right of action to recover damages for an injury *** sustained cannot be so abridged by legislation as to deprive the injured party of all remedy.” Id. at 440. Noonan v. City of Portland, 161 Or 213, 88 P2d 808 (1939), followed suit. In that case, the court upheld a city charter granting immunity to the city itself, but not to city officers.
In Hale v. Port of Portland, 308 Or 508, 523, 783 P2d 506 (1989), the court again held that Article I, section 10, prohibits limitations on common-law actions that leave a plaintiff “entirely without a remedy.” In that case, the plaintiff suffered injuries in a motor vehicle collision. He sued several defendants, including the City of Portland, which the plaintiff alleged was negligent in maintaining the road where the accident occurred. He sought more than $600,000 in damages. The city moved to strike the claim for damages in excess of the $100,000 limitation that the Oregon Tort Claims Act then imposed. The trial court granted the motion, and the Court of Appeals affirmed. On review, the plaintiff argued that, among other things, the statutory damage limitation violated Article I, section 10. This court rejected the argument. Reviewing its prior cases — in particular, Noonan and Evanhoff — the court explained that those decisions “held only that Article I, section 10, is not violated when the legislature alters * * * a cause of action, so long as the party injured is not left entirely without a remedy.” Id. at 523. “[I]t is enough,” the court declared, “that the remedy is a substantial one.” Id.
In determining that the limitation on the plaintiff’s damages did not deprive him of a “substantial” remedy, the *367 court observed that the statutory damage limitation applied regardless of whether the damages that a plaintiff suffered arose out of a governmental or proprietary function. Id. Thus, the court noted, the challenged statute represented a quid pro quo. On the one hand, it limited the amount of damages that could be recovered, while on the other hand, it expanded the types of cases that could trigger municipal liability by eliminating the traditional immunity that applied when damages arose as a result of a municipality performing a governmental function:
“The class of plaintiffs has been widened by the legislature by removing the requirement that an injured party show that the municipal corporation’s activity that led to the injury was a proprietary one. At the same time, however, a limit has been placed on the size of the award that may be recovered. A benefit has been conferred, but a counterbalancing burden has been imposed. This may work to the disadvantage of some, while it will work to the advantage of others.”
Id. The court did not say that such a quid pro quo was required to satisfy the requirements of Article I, section 10. But it concluded that such a “new balance” was clearly within the legislature’s authority, notwithstanding the limitations of the remedy clause. Id.
In Neher v. Chartier, 319 Or 417, 879 P2d 156 (1994), this court again addressed the constitutionality of a statutory limitation on damages. In that case, the plaintiff’s daughter was killed when she was struck by a Tri-Met bus driven by the defendant, Chartier. The daughter was acting within the scope of her employment at the time of the accident, and, under existing workers’ compensations statutes, the estate recovered the maximum $3,000 burial benefit. The plaintiff, as the representative of the estate, then initiated an action against Chartier and Tri-Met. The defendants, however, moved for judgment on the pleadings, arguing that they were immune under a provision of the Oregon Tort Claims Act that granted immunity to public bodies and their employees for claims arising out of injuries that were covered by workers’ compensation law. The trial court granted the motion, and the Court of Appeals affirmed, concluding that the substitute remedy of workers’ *368 compensation benefits for tort damages did not leave the plaintiff wholly without a remedy.
This court disagreed, in part. Citing its earlier decision in Hale, the court first noted that Article I, section 10, “is not violated ‘so long as the party injured is not left entirely without a remedy/” and that remedy is “‘substantial.’” Id. at 426 (quoting Hale, 308 Or at 523). With that standard in mind, the court concluded that the estate itself had not been left wholly without a remedy, as it was entitled to $3,000 in burial expenses under the workers’ compensation law. Neher, 319 Or at 426. But, the court said, the estate was not the only real party in interest in a wrongful death action; the decedent’s parents also were parties, and they were not entitled to those benefits. “Thus,” the court concluded, “although the decedent’s estate (for which a parent happens to serve as a personal representative) has not been left ‘wholly without remedy/ the surviving parents of the decedent, who otherwise would be entitled to recover, * * * have been left wholly without a remedy.” Id. at 426-27 (emphasis in original).
In Greist v. Phillips, 322 Or 281, 906 P2d 789 (1995), the court addressed the constitutionality of another statutory limitation on damages, in that case ORS 18.560(1), which imposed a $500,000 limitation on noneconomic damage awards.[3] The plaintiff had been awarded economic damages of $100,000 and noneconomic damages of $1.5 million, but the trial court reduced the award of noneconomic damages in accordance with the statutory limitation. On review, the plaintiff argued that the limitation on the noneconomic damage award violated Article I, section 10. Specifically, the plaintiff argued that the statutory limitation “wholly denies a remedy for legitimate losses that exceed $500,000.” Id. at 290. This court rejected the argument. Citing both Hale and Neher, the court held that “[p]laintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. * * * Although that remedy is not precisely of the same extent as that to which plaintiff was entitled *369 before the enactment of ORS 18.560(1), that remedy is substantial.” Id. at 291. The court held that the remedy was substantial, among other things, “because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount.” Id. The court’s holding in Greist prompted a concurring opinion from Justice Unis, who took the court to task for applying a substantial remedy test, which he argued was “vague and gives no guidance to legislators, litigants, or ordinary citizens as to how courts will apply the standard.” Id. at 311 (Unis, J., concurring in part, specially concurring in part).
In Smothers v. Gresham Transfer, Inc., 332 Or 83, 124, 23 P3d 333 (2001), the court engaged in a wholesale reevaluation of its remedy clause jurisprudence. The court engaged in an extended historical analysis of the scope and effect of the remedy clause and established a new method of analysis of claims arising under it. 332 Or at 123-24. In that case, the plaintiff had been injured in a work-related accident. He filed a claim under the state’s workers’ compensation statutes, but that claim was denied. He then filed a claim for negligence against his employer. Id. at 86. The employer responded with a motion to dismiss the claim on the face of the pleadings on the ground that the workers’ compensation statutes provided the exclusive remedy for work-related injuries. The trial court granted the employer’s motion, and the Court of Appeals affirmed. Smothers v. Gresham Transfer, Inc., 149 Or App 49, 941 P2d 1065 (1997). This court reversed, holding that the trial court should not have granted the employer’s motion to dismiss because the statute providing that the workers’ compensation law is the exclusive remedy for work-related injuries violated the remedy clause. Smothers, 332 Or at 86.
In brief, the court explained that the remedy clause of Article I, section 10, was “intended to preserve common-law right[s] of action.” Id. at 119. The court summarized its analysis in the following terms:
“Drafters of remedy clauses in state constitutions sought to protect absolute common-law rights by mandating that a remedy always would be available for injury to those rights. The drafters of the Oregon remedy clause identified abso *370 lute rights respecting person, property, and reputation as meriting constitutional protection under the remedy clause. As to those rights, the remedy clause provides, in mandatory terms, that remedy by due course of law shall be available to every person in the event of injury. The word ‘remedy’ refers both to a remedial process for seeking redress for injury and to what is required to restore a right that has been injured. Injury, in turn, is a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857. A common-law cause of action is a constitutionally adequate remedy for seeking redress for injury to protected rights. However, the remedy clause does not freeze in place common-law causes of action that existed when the drafters wrote the Oregon Constitution in 1857. The legislature may abolish a common-law cause of action, so long as it provides a substitute remedial process in the event of an injury to the absolute rights that the remedy clause protects.”
Id. at 124.[4] The court then articulated a method of analyzing claims brought under the remedy clause that consists of answering two questions:
“[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 [,] protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury”

Id.

Turning to the particulars of that case, the court determined that the plaintiff’s action for negligence against his employer would have been recognized at common law in 1857 and that, because the exclusive remedy provision of *371 the workers’ compensation statutes completely eliminated that common-law remedy, the statute was unconstitutional: “Having alleged an injury of the kind that the remedy clause protects, and having demonstrated that there was no remedial process available under present workers’ compensation laws, plaintiff should have been allowed to proceed with his negligence action.” Id. at 136.
Thus, under Smothers, the initial question is whether, under the circumstances of the case, the common law of Oregon would have recognized a cause of action for the claimed injury. If the answer to that question is no, then the remedy clause is not implicated, and the matter is at an end. If the answer to the first question is yes, then we must determine whether a challenged limitation renders the common-law remedy constitutionally inadequate.
Smothers did not supply much in the way of explanation as to how we are to determine the adequacy of a remedy under Article I, section 10. The court noted that, in its prior cases, it had never held “that the remedy clause prohibits the legislature from changing a common-law remedy or form of procedure, attaching conditions precedent to invoking the remedy, or perhaps even abolishing old remedies and substituting new remedies.” Id. at 119. That said, the court declared that neither can the legislature substitute an “’emasculated remedy’ that is incapable of restoring the right that has been injured.” Id. at 119-20. In that regard, the court explicitly noted that, in Hale, Neher, and Greist, it had concluded that a remedy is adequate under Article I, section 10, so long as it is “substantial.” Id. at 120 n 19. The court stated that it was simply “beyond the scope of this opinion to address issues relating to the adequacy of the amount of damages that may be available under a legislatively substituted process.” Id.
Clarke v. OHSU, 343 Or 581, 175 P3d 418 (2007), was the first post -Smothers decision to address the constitutionality of a statutory damage limitation in any detail.[5] In that case, the plaintiff suffered permanent brain damage *372 as a direct consequence of the negligence of Oregon Health and Science University (OHSU) and certain of its employees and agents. Id. at 586. The damages resulting from his injuries totaled more than $17 million. Id. The defendants, however, admitted negligence and, invoking the damage limitation of the Oregon Tort Claims Act, moved for entry of judgment against them for $200,000. Id. at 587. The trial court granted the motion and entered judgment accordingly. Id.
On review, the plaintiff argued that the statutory damage limitation of $200,000 violated Article I, section 10. Id. The court held that, because OHSU was an instrumentality of the state that would have been immune from liability at common law, the limitation of its liability posed no issue of constitutional adequacy under the remedy clause. As to the individual defendants, however, the court concluded that the statutory damage limitation was unconstitutional on the facts of that case. Id. at 610.
The court began its opinion in Clarke by recapitulating its prior cases on the subject, including Hale, Neher, Greist, Smothers, and Jensen. Id. at 601-06. Among other things, the court quoted with approval the portion of Hale that described the proper analysis of the adequacy of a remedy under Article I, section 10, as depending on whether the existing remedy “is a substantial one;” indeed, the Clarke court added its own emphasis to the words “substantial one.” Id. at 602. Consistently with that emphasis, the court summarized the significance of its prior cases in the following terms:
*373 “[A]s our review of the cases demonstrates, Article I, section 10, does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury, as long as it does not leave the injured party with an ‘emasculated’ version of the remedy that was available at common law.”
Id. at 606. The court acknowledged that neither the constitution itself nor the prior case law provides a precise test for determining whether a particular remedy has been “emasculated.” Id. Having said that, the court concluded that the disposition of the case before it was “relatively simple,” given the fact that the statutory damage limitation deprived the plaintiff of all but a very small portion of the over $17 million in damages that he suffered. Id. at 607.
To the defendants’ argument that even the relatively small amount allowed by the statutory limitation was sufficient under Hale and Greist, the court replied that those cases were distinguishable on their facts. In Clarke’s case, the court held, the claim of the plaintiff against the individual defendants had been essentially eliminated. The court reiterated that “the legislature is authorized under Article I, section 10, to vary or modify the nature, the form, or the amount of recovery for a common-law remedy,” but added that “that authority is not unlimited.” Id. at 609.
In a concurring opinion, Justices B aimer and Kistler emphasized that, although Hale and Greist were distinguishable on their facts, “nothing in the majority opinion undermines the holdings in those cases that the [r]emedy [c]lause does not prohibit the legislature from imposing caps on tort damages as long as those caps do not deprive a plaintiff of a ‘substantial remedy.’” Id. at 615-16 (Balmer, J., concurring).
The foregoing case law consistently holds that the legislature is authorized to enact a limitation on tort claim recovery so long as the remaining remedy is “substantial.” As the court declared — twice—in Clarke, Article I, section 10, does not deprive the legislature of the authority “to vary and modify both the form and the measure of recovery for an injury,” so long as the legislature does not leave the injured party with an “emasculated” remedy. 343 Or at 606 *374 (emphasis added); id. at 609 (the legislature is authorized “to vary, or modify the nature, the form, or the amount of recovery for a common-law remedy” (emphasis added)). The reference to “emasculated” remedies is unfortunate, if not sexist,[6] and we discourage its further use in favor of the references in the case law to the necessity that remaining remedies be “substantial.”[7]
B. Application
With those considerations in mind, we turn to this case. Under Smothers, we confront two questions. First, we must determine “whether an ‘absolute common-law right’ that existed when the Oregon Constitution was drafted in 1857 would have provided plaintiff with a remedy for the injuries that she sustained in the accident with defendant.” Lawson, 339 Or at 259. For the purposes of this opinion, we assume, without deciding, that the answer to that question is, yes. See Jensen, 334 Or at 418 (assuming, without deciding, that the plaintiff’s injury was protected by Article I, section 10, “because the second step of the Smothers analytical framework is dispositive”). That triggers a second question; namely, whether the legislatively adopted limitation on that remedy is “constitutionally adequate.” Smothers, 332 Or at 124.
As we have noted, under this court’s prior case law, the constitutional adequacy of a modern remedy may be established by the fact that the modern remedy is “substantial” and does not leave the plaintiff “wholly without remedy.” *375 In this case, defendants contend that plaintiff’s remedy of $200,000 is constitutionally adequate under that test. Defendants are correct.
The cases make clear that the mere fact that the statutory limitation resulted in a reduction in the amount that plaintiff otherwise would have been awarded, by itself, does not establish a violation of Article I, section 10. As this court explained in Clarke, Article I, section 10, does not deprive the legislature of the authority “to vary and modify both the form and the measure of recovery for an injury,” so long as the legislature leaves the plaintiff with a substantial remedy. 343 Or at 606 (emphasis added). Likewise, in Hale, the court declared that “Article I, section 10, is not violated when the legislature alters * * * a cause of action, so long as the party injured is not left entirely without a remedy. * * * [I]t is enough that the remedy is a substantial one.” 308 Or at 523.
This court has never spelled out the precise contours of such a determination. Such precision is perhaps impossible. See Clarke, 343 Or at 613 (Balmer, J., concurring) (“This court has not articulated a precise test, and it probably is not possible to do so.”). As this court has stated in another context, determining whether an award of damages is “substantial” requires “flexibility and a consideration of the facts and circumstances that each case presents.” Hamlin v. Hampton Lumber Mills, Inc., 349 Or 526, 537, 246 P3d 1121 (2011).
This court has concluded that a legislative limitation on damages is constitutionally inadequate in only two cases, Neher and Clarke. In the former case, the court held that, although the estate of the victim had not been completely deprived of a remedy by virtue of the existence of a $3,000 burial benefit under workers’ compensation law, the parents of the victim had been totally deprived of any remedy. In the latter case, this court held that, when the statutory limitation of $200,000 deprived the plaintiffs of all but one percent of the more than $17 million in damages that they would have otherwise recovered, the limitation left them with a constitutionally inadequate remedy.
*376 In this case, but for the $200,000 damage limitation of ORS 31.270(l)(b) (2007), plaintiff would have recovered a total of $507,500, consisting of $382,500 in economic damages and $125,000 in noneconomic damages. The damage limitation thus does not leave plaintiff “wholly without a remedy” as was the case for the parents of the plaintiff in Neher. And it represents a far more substantial remedy than the paltry fraction that remained after the imposition of the limitation in Clarke.
The facts of this case are much more like those of Hale, in which the court found that a statutory damage limitation of $100,000 left the plaintiff with a substantial remedy even though the plaintiff had alleged more than $600,000 in damages. To be sure, this court observed that the legislature, in adopting the statutory damage limitation at issue in that case, had in effect exchanged the limitation for a statutory expansion of the class of persons who are permitted to sue. 308 Or at 523. But the distinction is of no moment in this case, in which a similar quid pro quo may be seen to apply. As to defendant City of Beaverton, in fact, the same “balance” that the court mentioned in Hale applies. As to defendant Boyle, under ORS 30.265(1) and 30.285(1), the city remains liable for the torts of its employees committed within the scope of employment. Thus, while the legislature limited the amount that may be recovered from individual defendants who are municipal employees, it substituted the “deep pocket” of the municipality itself as the ultimate payor. Plaintiffs, in other words, have been conferred a substantial benefit in exchange for the damage limitation. As Hale makes clear, that is a permissible legislative decision under Article I, section 10.
This case is even more like Greist, in which the court held that the plaintiff was not left without a remedy when the tort claim limitation left her with a total of $600,000 in damages, compared with the initial award of $1.5 million. “Although that remedy is not precisely of the same extent as that to which plaintiff was entitled” before the imposition of the limitation, the court explained, “that remedy is substantial.” 322 Or at 291. The same is true in this case.
*377 Plaintiff insists that her common-law right to recover damages for negligence has been inadequately remedied with the $200,000 tort claim limitation. She reasons that, “under the common law, the plaintiff had the right to obtain a full recovery for damages from the individual tortfeasor who negligently caused the injuries — in other words, she was entitled to be made whole.” It is that common-law right — the right to be made whole — that she contends has been eliminated with the imposition of the statutory damage limitation.
The dissent takes a similar approach.[8] According to the dissent, the remedy clause guarantees plaintiff “the full amount of economic damages attributable to defendant.” 353 Or at 359 (De Muniz, J. pro tempore, dissenting). The dissent states that, as such, Article I, section 10, does not countenance “partial” remedies. Id. at 393 (De Muniz, J. pro tempore, dissenting).[9]
Plaintiffs and the dissent’s interpretation of Article I, section 10, is essentially the same interpretation that the plaintiff asserted in Greist, and that this court explicitly rejected. See Clarke, 343 Or at 615 (Balmer, J., concurring) (noting that Greist rejected the argument that Article I, section 10, guarantees a right to be made whole). Indeed, plaintiff’s and the dissent’s interpretation cannot be squared with any of the foregoing cases dating back at least to 1901 — cases that consistently hold that Article I, section 10, “does not eliminate the power of the legislature to vary and modify both the form and the measure of recovery for an injury,” Clarke, 343 Or at 606 (emphasis added), but rather guarantees that plaintiffs not be left with less than a “substantial” remedy. Id. at 602, 605; Greist, 322 Or at 291; Hale, *378 308 Or at 523. Plaintiff’s and the dissent’s interpretation essentially inverts that longstanding interpretation of the remedy clause from one that guarantees that plaintiffs not be left “wholly without remedy” to one that guarantees that plaintiffs obtain a whole remedy.
The dissent acknowledges that we have correctly described our prior case law as holding that the remedy clause does not limit legislative authority to alter a remedy so long as the remaining remedy is “substantial.”[10] But it insists that our understanding of the meaning of the word “substantial” is in error. According to the dissent, that term, as used in remedy clause cases, has acquired a special meaning that is somewhat different from what it ordinarily means. The dissent asserts that a “substantial” remedy is one that wholly restores a plaintiff’s injury.
In asserting that the notion of a “substantial” remedy is limited to one that is wholly restorative of a plaintiff’s injury, the dissent claims support from this court’s decisions in Hale and Greist. The dissent’s reading of those decisions, however, does not bear careful scrutiny.
As we have noted, in Hale, the court upheld the application of a damage limitation that had the effect of reducing $600,000 in claimed damages to $100,000. The court held that Article I, section 10, does not deprive the legislature of authority to alter a cause of action or reduce damages. “[T]he remedy need not be precisely of the same type or extent” as those existing at common law, the court explained. 308 Or at 523. “[I]t is enough that the remedy is a substantial one.” Id.
The dissent deftly describes the court’s analysis in Hale without mentioning the fact that the court specifically stated that the remedy clause leaves the legislature free to alter the “type or extent” of damages that may be recovered. *379 Instead, the dissent embarks on a detailed analysis of two earlier cases that the court in Hale cited — Noonan and Evanhoff — which the dissent reads as holding that the remedy clause is not violated when an alternative remedy remains available. 353 Or at 392-96 (De Muniz, J. pro tempore, dissenting). The dissent then boldly declares that, because “[n] either of those cases can be read for the proposition that a partial remedy *** is capable of satisfying the [r]emedy [c] lause,” Hale cannot be read to countenance such a partial remedy, either. Id. at 393 (De Muniz, J. pro tempore, dissenting). That makes no sense. Even assuming for the sake of argument that the dissent fairly characterizes Noonan and Evanoff as not involving the issue of the constitutionality of partial remedies, the fact remains that Hale did. And it simply cannot be denied that Hale upheld the constitutionality of a partial remedy.
The dissent’s reading of Greist is similarly unavailing. As we have noted, in that case, the court upheld a statutory damage limitation that reduced the plaintiff’s initial award from $1.5 million to a total of $600,000, consisting of $100,000 in economic damages and $500,000 in noneconomic damages. The court held that, even though $600,000 was only slightly more than one third of the original award, that total amount nevertheless was constitutionally adequate because it was a substantial amount:
“Plaintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. There was no statutory limit on the latter category of damages. Although that remedy is not precisely of the same extent as that to which plaintiff was entitled before the enactment of ORS 18.560(1), that remedy is substantial.”
322 Or at 291 (emphasis added). The dissent ignores the court’s holding in Greist. According to the dissent, the decision actually was predicated on the fact that recoveries for wrongful death historically were quite low. 353 Or at 395 (De Muniz, J. pro tempore, dissenting). But that is simply not what the court in Greist said. Rather, as the foregoing quotation makes clear, the court held that the amount of plaintiff’s award of $600,000 was a substantial award, in and of itself. The court then offered an additional reason *380 for its decision, observing that the award was substantial “also because the statutory wrongful death action in Oregon has had a low limit on recovery.” 322 Or at 291 (emphasis added).
The dissent also suggests that, in any event, Greist has limited precedential value because it involved the application of the remedy clause to claims for wrongful death, which this court has subsequently determined are not subject to the remedy guarantee of Article I, section 10. 353 Or at 394 n 5 (De Muniz, J. pro tempore, dissenting). That is a curious criticism. That this court later held that its remedy clause analysis does not apply to wrongful death claims, see Hughes v. PeaceHealth, 344 Or 142, 151-52, 178 P3d 225 (2008), in no way suggests that the remedy clause analysis itself was wrong. In fact, in subsequent Article I, section 10, cases, this court has continued to cite and discuss Greist — and Neher, also a wrongful death case — in describing its remedy clause analysis. Clarke, for example, contains extensive discussions of both Greist and Neher without any suggestion that either has limited precedential value. Clarke, 343 Or at 603-05.
The dissent also complains that we have observed that this case is unlike other cases, such as Clarke, in which the court concluded that a remedy was constitutionally inadequate. According to the dissent, we have engaged in logically fallacious reasoning in deducing that, because this case is not like Clarke, the remedy is constitutionally adequate. If that were what we actually said, the dissent would have a point. But nowhere in our opinion have we concluded that, merely because this case is unlike Clarke or any other prior decision, it follows that the result in this case must be different. The dissent’s complaint, in other words, amounts to no more than attacking a straw person.
The dissent also complains that our conclusion that a partial remedy may be constitutionally adequate under Article I, section 10, fails to adhere to the “text and context” of the remedy clause. 353 Or at 389 (De Muniz, J. pro tempore, dissenting). Interestingly, the dissent offers nothing to support that assertion. In that regard, however, we note that nothing in the wording of the remedy clause *381 says anything about a right to be wholly restored. It guarantees remedy “by due course of law.” Smothers, 332 Or at 121-22. It is the dissent’s reading of Article I, section 10, that fails to comport with the text of the constitution. If, as the dissent suggests, Article I, section 10, requires that all remedies must be “fully restorative,” 353 Or at 406 (De Muniz, J. pro tempore, dissenting), then the “due course of law” clause is rendered superfluous.
The dissent nevertheless claims support for its position from Smothers, relying on this court’s description of the term “remedy” as including, in part, “that which is ‘required to restore a right that has been injured.’” 353 Or at 399 (De Muniz, J. pro tempore, dissenting) (quoting Smothers, 332 Or at 124). The dissent leaves out the following sentence from its quotation, which states that, “[i]njury, in turn, is a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857.” Smothers, 332 Or at 124. Thus, what must be “restored” is an injury that would have been recognized as the basis for a cause of action in 1857. In that regard, the dissent fails to mention that, in the mid-nineteenth century, negligence claims were subject to the doctrine of contributory negligence, which operated as a complete bar to a plaintiff’s recovery. See generally Lawson, 339 Or at 262 (noting “the indisputable proposition that, in the early years of this state’s history, a plaintiff’s contributory negligence was an absolute bar to recovery for the negligent acts of another”).[11]
*382 Moreover, under the prevailing law at the time that the state’s constitution was adopted, a plaintiff was required to prove not only that his or her injuries were caused by a defendant’s negligence but also that his or her own actions did not contribute to those injuries. Contributory negligence, in other words, was a principle of causation that constituted a part of a plaintiff’s burden of proof.
Although we are aware of no pertinent case law from the courts of this state dating precisely to the time of the adoption of the constitution, there are several cases dating to a few short years later that strongly suggest that Oregon’s courts followed the established rule.[12] See Smothers, 332 Or *383 at 129 (relying on other-state and post-1870s case law to determine the state of negligence at the time of the adoption of the Oregon Constitution). In Kahn v. Love, 3 Or 206 (1870), the occupant of a building sued the owner for damages for injuries caused by the unsafe condition of the building. The owner demurred to the complaint because, among other things, the plaintiff had failed to allege that his injuries were not caused by his own lack of care. The trial court sustained the demurrer and dismissed the complaint. This court affirmed, explaining that “[t]he plaintiff in an action for damages, occasioned by the defendant’s negligence, must so frame his complaint as not to leave an inference that he was guilty of negligence that contributed to the injury.” Id. at 208.
To similar effect is Walsh v. Oregon Ry. & Navigation Co., 10 Or 250 (1882). In that case, the plaintiff was injured as he stuck his head out of a moving train as it passed by a water tower. The trial court dismissed the action before trial. *384 This court reversed, holding that there was a jury question about whether plaintiff’s injuries were a result of his own negligence. In reaching that conclusion, the court described the burden of proof in the following terms:
“In actions for negligence, the burden of proof always rests upon the party charging it. He must prove that the accident was caused by the wrongful act, omission, or neglect of the defendant, and that the injury of which he complains was not the result of his own negligence and the want of ordinary care and caution. Although the evidence may disclose the defendant to have been guilty of negligence, it will not excuse negligence or the want of proper care and precaution on the part of the plaintiff. The law will not permit a recovery where the plaintiff, by his own negligence or carelessness, has contributed to produce the injury from which he has suffered. To entitle, then, the plaintiff to recover (conceding the negligence of the defendant in not removing the water-tank to the proper distance after widening the track) it was incumbent on him to prove, when the accident occurred, that he exercised that ordinary care which a party ought to observe under the particular circumstances in which he was placed.”
Id. at 253-54.
By the 1880s, a number of courts began to voice objections to the notion that a plaintiff should be required to negate contributory negligence as part of his or her case. See, e.g., O’Brien v. Tatum, 84 Ala 186 (1887); Robinson v. Western P. R. Co., 48 Cal 409 (1874); Benson v. Goodwin, 147 Mass 237 (1888). A number of treatise writers, after noting the general rule, similarly suggested that a better one would be to regard contributory negligence as an affirmative defense. See, e.g., Seymour D. Thompson, 2 The Law of Negligence 1175 (1880) (“Generally, contributory negligence on the part of the plaintiff will bar a recovery. It would seem, therefore, to be a matter of defence, and that it would devolve upon the defendant to prove it.”).
Oregon, however, did not join that particular chorus until 1885. As Judge Matthew Deady observed in Conroy v. Oregon Constr. Co., 23 F 71, 72 (D Or 1885), at that point, the state courts had become “nearly evenly divided on the question whether ‘contributory negligence’ is a part of the *385 plaintiff’s case or a matter of defense.” As for Oregon, Judge Deady observed, Walsh appeared to indicate that the state supreme court “decided that it is a part of the plaintiff’s case.” Id. See also Charles Fisk Beach, Jr., A Treatise on the Law of Contributory Negligence 425-26 (1885) (citing Kahn and Walsh, as well as Deady’s opinion in Conroy, as examples of cases in which the burden is placed on the plaintiff to prove an absence of negligence).
In Grant v. Baker, 12 Or 329, 7 P 318 (1885), this court changed course. In that case, the plaintiff initiated an action for the wrongful death of an individual, who was killed when he fell over the edge of a poorly designed roadway. The trial court nonsuited the case on contributory negligence grounds. The Supreme Court reversed. The court began by noting that its earlier decision in Walsh “might justify the impression” that it is the plaintiff who bears the burden of disproving contributory negligence. Id. at 332. The court quickly disavowed such a rule and confined Walsh to its facts. The description of the burden of proof in Walsh, the court in Grant held, “was intended to apply to the state of facts mentioned, and not to lay down any general rule.” Id. at 333. The better rule, the court concluded, has always been that “contributory negligence is a defense and must be averred as such.” Id.
Thus, even assuming that the dissent is correct that the “restorative” quality of a remedy is controlling, under this court’s case law, plaintiff in this case — who did not plead that she had exercised due care and who the jury found to have been 50 percent at fault — -would have been entitled to recover nothing.[13] Under the circumstances, it is difficult *386 to understand the dissent’s complaint that the $200,000 in damages that plaintiff was awarded was not fully “restorative” of her common-law negligence claim.
The dissent nevertheless disputes what this court in Lawson declared to be “indisputable”; namely that, in the mid-nineteenth century, a plaintiff’s contributory negligence barred recovery on a negligence claim. At the least, the dissent contends, we cannot say “with the certainty that should be required for a decision of this magnitude” what the state of the law was in 1857, because, at that time, there existed no Oregon appellate court decisions on the subject of contributory negligence. 353 Or at 403 (De Muniz, J. pro tempore, dissenting).
Of course, the dissent is correct that it is exceedingly difficult to determine the state of Oregon law over 150 years ago. Nevertheless, that is what Smothers requires. Indeed, the court in Smothers confronted the same difficulty and resolved it, as we do here, by making the best of the limited historical resources at the court’s disposal.
In Smothers, the court addressed the question whether the common law at the time of the adoption of this state’s constitution would have recognized a cause of action for negligence against an employer. The court found no case law — it bears repeating, no case law — anywhere in the nation recognizing such a cause of action at that time. 332 Or at 128-29. Undaunted, the court stated that,
*387 “[a]¡though no Oregon cases addressed the common-law rights of employees to bring such negligence actions against their employers in the years immediately surrounding the creation of the Oregon Constitution, the content of the common law in 1857 may be divined from a wide range of sources. Cases from other jurisdictions, as well as Oregon cases decided within a relatively short period after 1857, are instructive”
Id. at 129 (emphasis added). The court then referred to four cases, three from other jurisdictions and a single decision of this court, all published more than two decades after the adoption of the Oregon Constitution. The earliest of the cases was the United States Supreme Court’s decision in Hough v. Ry. Co., 100 US 213, 25 L Ed 612 (1879). The three other cases were Atchison, T. & S.F.R. Co. v. Moore, 29 Kan 632 (1883); Wilson v. Willimantic Linen Co., 50 Conn 433 (1883); and Anderson v. Bennett, 16 Or 515, 19 P 765 (1888). Of the 1888 Oregon decision, the court in Smothers observed that, because “nothing in the court’s opinion in that case suggested that the holding was novel or that the decision marked a departure from any previous decisions or jurisprudence on the subject,” it was permissible to infer from that decision that, “in 1857, the common law of Oregon would have recognized” the claim. 332 Or at 131.
Thus, based on a handful of cases decided 20 to 30 years after the adoption of the state constitution, this court inferred the existence of the law decades earlier. The fact is that this court has never insisted on the sort of “certainty” that the dissent demands in Article I, section 10, cases. See, e.g., Lawson, 339 Or at 261-62 (citing Smothers and relying on “various other sources to determine the content of the common law at the time of the drafting of the Oregon Constitution, including roughly contemporaneous cases from other jurisdictions, as well as Oregon cases decided in the decades shortly after the adoption of the constitution.”).
Moreover, unlike the court in Smothers, we are not merely relying on four cases decided well after the adoption of this state’s constitution. As we have noted, there are numerous cases from around the country dating from before the time of the adoption of the Oregon Constitution reflecting what scholars — both in the mid-nineteenth century and *388 now — agree was the widespread acceptance of the doctrine of contributory negligence as a component of a plaintiff’s case at that time. It is in that context that we have examined the later Oregon case law for any suggestion that Oregon courts saw the law differently. We have found no such case law. To the contrary, the earliest Oregon cases were consistent with what we have described as the well-established rule.
The dissent rejoins that, regardless of who has the better of the argument about Oregon’s legal history, Smothers cannot be read to “freeze in place [] every repealed, overruled or outmoded argument that a defendant might have relied on in 1857 to resist an injured person’s claim.” 353 Or at 404 (De Muniz, J. pro tempore, dissenting). Smothers, however, requires that the “injury” that a modern remedy must restore is “a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857.” 332 Or at 124. As we have noted, plaintiff’s injury in this case — as pleaded and determined by a jury — is not the sort for which a cause of action existed at that time. Smothers does not give us liberty to pick and choose which causes of action that existed in 1857 we now regard as “outmoded.” It requires us to take the law as we find it as of that time. That is what we have endeavored, in good faith, to accomplish.
Finally, the dissent complains that the “substantial” remedy test that we recognize in this case is standardless and lacks a “guiding principle.” 353 Or at 404-06 (De Muniz, J. pro tempore, dissenting). The dissent, of course, echoes precisely the same criticism that Justice Unis leveled in Greist, and that this court rejected. The fact is that not every constitutional provision can be reduced to a neat formula that avoids the necessity of applying careful judgment to the facts and circumstances of each case.
For the foregoing reasons, we conclude that the challenged $200,000 damage limitation does not leave plaintiff with a constitutionally inadequate remedy under Article I, section 10, of the Oregon Constitution.
Certified question answered.

 ORS 30.265(1) provides, in part, that “[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification *** shall be an action against the public body only.”

 The Oregon Tort Claims Act has since been amended to increase the limitation of liability. Those amendments do not apply to this case.

 The statute later was declared unconstitutional on other grounds in Lakin v. Senco Products, Inc., 329 Or 62, 82, 987 P2d 463 (1999).

 The court noted that, in a number of its earlier Article I, section 10, cases, such as Noonan, it had suggested that the remedy clause was not intended to preserve common-law rights and that later cases, such as Hale, had repeated the suggestion. Smothers, 332 Or at 118-19. The court disavowed those statements, id. at 119, which have no bearing on the questions before us in this case.

 In Jensen v. Whitlow, 334 Or 412, 51 P3d 599 (2002), the plaintiff challenged, in federal district court, the constitutionality of the statutory damage limitation imposed by the Oregon Tort Claims Act both facially and as applied. The federal *372 district court submitted to this court the question whether the damages limitation, “on its face or as applied,” violates several provisions of the state constitution, including Article I, section 10. Id. at 415. This court declined to answer the question to the extent that it pertained to as-applied challenges to the damages limitation because the record was inadequate to enable the court to answer the question. Id. As for the facial challenge to the damages limitation, the court framed its analysis in terms of the two Smothers questions. Id. at 418. It then assumed, without deciding, that the answer to the first question was that the injury at issue was one for which Article I, section 10, guarantees a remedy. Id. Turning to the second question, concerning the adequacy of the modern remedy, the court concluded that, “because a damages award has yet to be determined in this case, the damages ‘cap’ does not render the remedy available to plaintiff ‘incapable of restoring the right that has been injured.’” Id. at 421 (quoting Smothers, 332 Or at 119-20).

 Webster’s defines “emasculate” as:
“1: to deprive of virile or procreative power: CASTRATE, GELD 2 : to deprive of masculine vigor or spirit: weaken or attenuate by removal or alteration of potent qualities as a: to divest (language) of vigor and freedom (as by excision, euphemism, or weakening of sense) b : to deprive (a law) of force or effectiveness (as by amendment or interpretation).”
Webster’s Third New Int’l Dictionary 738 (unabridged ed 2002). The use of the term in the Article I, section 10, context has been justly criticized for its implication that “strength and vitality are gender-specific.” Ackerman v. OHSU Medical Group, 233 Or App 511, 532 n 10, 227 P3d 744 (2010).

 The particular term used in reference to the inadequacy of remedies under Article I, section 10, traces back to West v. Jaloff, 113 Or 184, 232 P 642 (1925), in which the court rejected the defendant’s proposed construction of a statute that conferred limited immunity from liability on ambulance drivers because the construction would give the plaintiff “an emasculated remedy wholly inadequate under many conditions.” Id. at 195.

 There are actually two dissents, one authored by Justice De Muniz and the other by Justice Durham. As we understand it, however, Justice Durham’s opinion merely emphasizes one of the points made by Justice De Muniz. Accordingly, when we refer to “the dissent,” we refer to the one authored by Justice De Muniz.

 The dissent is not entirely consistent on this point. Throughout the opinion, it complains about our holding countenancing “partial” remedies and asserts that “the constitution plainly requires that plaintiff have a fully restorative remedy.” 353 Or at 406 (De Muniz, J. pro tempore, dissenting). At other points in the opinion, however, the dissent suggests that a constitutionally sufficient remedy must be at least “capable” of being fully restorative. Id. at 391, 392, 394, 396 (De Muniz, J. pro tempore, dissenting). The dissent does not explain the significance of that difference in phrasing.

 Actually, the dissent is not quite consistent in that regard, as well. At one point, the dissent takes us to task for abandoning the use of the outdated term “emasculated,” used in some cases, in favor of the term “substantial,” used in others. 353 Or at 390 (De Muniz, J. pro tempore, dissenting). In the balance of the opinion, the dissent acknowledges the importance of the term in prior cases, but asserts that the term has been “imbued” “with a clear meaning,” that is, one that wholly restores a right that has been injured. Id.

 The first appearance of contributory negligence in a state court is usually traced to Smith v. Smith, 19 Mass (2 Pick) 621 (1824), in which the court upheld the dismissal of a negligence action. “This action cannot be maintained,” the court explained, “unless the plaintiff can show that he used ordinary care; for without that, it is by no means certain that he himself was not the cause of his own injury.” Id. at 623. By 1860, nearly every state had expressly recognized the doctrine of contributory negligence, most often as a matter of the plaintiff’s affirmative burden. As one modern scholar has observed, “[i]n the space of a few decades, the doctrine of contributory negligence gained almost unanimous acceptance within the United States.” Peter N. Swisher, Virginia Should Abolish the Archaic Tort Defense of Contributory Negligence and Adopt a Comparative Negligence Defense in its Place, 46 U Rich L Rev 359, 361 (2011). As another commented, the doctrine “rapidly spread, ‘not unlike an unchecked conflagration in a windstorm’ throughout the country.” Stuart M. Speiser et al., 3 The American Law of Torts § 12:2,249-50 (2008) (quoting E. A. Turk, Comparative Negligence on the March, 28 Chi-Kent L Rev 189 (1950)).
*382 Nineteenth-century treatises confirm that, at the time, the general rule was that a plaintiff bringing a claim for negligence bore the burden of demonstrating that his or her injuries were not a result of the plaintiff’s own negligence. As early as 1811, Selwyn’s treatise on nisi prius stated that a plaintiff seeking to recover damages must show that he acted with “common and ordinary caution.” 2 W. Selwyn, An Abridgment of the Law of Nisi Prius 1092 n 5 (1811). Hilliard’s 1866 treatise on the law of torts declared that “it is the prevailing doctrine, that, to sustain an action on the case for negligence, the burden of proof is on the plaintiff to show negligence, wil[l]ful or otherwise, on the part of the defendant, and ordinary care on his own part.” Francis Hilliard, 1 The Law of Torts or Private Wrongs 125-26 (3d ed 1866) (emphasis in original). See also Theodore Sedgwick, A Treatise on the Measure of Damages 493 (3d 1858) (“[T]he party seeking legal redress must not only show his adversary to be in the wrong, but must also be prepared to prove that no negligence of his own has tended to increase or consummate the injury”).

 Over 100 reported early nineteenth-century cases reflect the widespread adoption of the doctrine of contributory negligence, most often as a matter of the plaintiff’s affirmative burden. See, e.g., Crommelin v. Coxe & Co., 30 Ala 318, 329 (1857) (“[T]he plaintiffs in this case would not be heard to complain, if with ordinary care and diligence they could have avoided the injury.”); Daley v. Norwich & W.R. Co., 26 Conn 591, 597 (1858) (“Two things must concur to support this action; an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff.”); Rusch v. City of Davenport, 6 Iowa 443, 451 (1858) (“We think there is no doubt, but that the burden of proof was on the plaintiff to show to the jury, that the accident happened without any want of reasonable care on his part.”); Galena & C. U. R. Co. v. Jacobs, 20 Ill 478, 488 (1858) (“[T]he plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care and diligence in endeavoring to avoid it.”); Evansville & C.R. Co. v. Hiatt, 17 Ind 102, 105 (“In this class of suits, the plaintiff must, as a general proposition, prove that the proximate, the immediate, cause of the injury sued for, was the wrongful act of the defendant, to which injury his own wrongful act did not immediately contribute.”); Carlisle v. Holton, 3 La Ann 48, 49 (1848) (“[A] party cannot be heard as plaintiff who has contributed to the collision by his own negligence or improper management.”); Lane v. Crombie, 29 Mass 176, 177 (1831) (“[T]he burden of proof was upon the plaintiff to show that the accident was not occasioned by her own negligence.”); Adams v. Wiggins Ferry Co., 27 Mo 95, 98 (1858) (“The rule [is] that there can be no recovery when both plaintiff and defendant are [at] fault, and each, by his negligence or otherwise, has contributed proximately and directly to the injury.”); Lehman v. *383 City of Brooklyn, 29 Barb 234, 236 (NY 1859) (“To entitle the plaintiff to recover, it must appear, affirmatively, that the accident resulted wholly from the negligence of the defendant, and that the negligence and improvidence of the plaintiff did not contribute to bring it about.”); Kennard v. Burton, 25 Me 39, 47 (1845) (“In suits against towns for the recovery of damages for injuries occasioned by defects in highways, the law is settled that the plaintiff must sh[o]w that the injury was not occasioned by negligence or the want of ordinary care on his own part.”); Norris v. Town of Litchfield, 35 NH 271, 276 (1857) (“In actions of this land it is settled that if the damage sustained has been in any degree directly caused by his own fault or negligence, the plaintiff cannot recover.”); Central R. Co. v. Moore, 24 NJL 824, 830 (1854) (“This action is for damages sustained by the plaintiff by reason of the alleged negligence of the defendants. To maintain it, the plaintiff must show that he was in the exercise of due care on his part, and that the defendants were not in the exercise of due care on their part.”); Timmons v. Central O. R. Co., 6 Ohio St 105, 108 (1856) (“[W]e think [the complaint] substantially defective in this, that it discloses, on the part of the plaintiff himself, a want of ordinary care, which was the immediate cause of the injury of which he complains.”); Beatty v. Gilmore, 16 Pa 463, 467 (1851) (“[T]o sustain [an action for negligence], there must be the concurrence of negligence, or the commission of an unlawful act on the part of the defendant, and reasonable care exercised by the plaintiff; mutual carelessness being destructive of the title to sue.”); Robinson v. Cone, 22 Vt 213, 222 (1850) (“In order to sustain the action on the case for negligence of the defendant, it must appear that the injury did not occur from any want of ordinary care on the part of the plaintiff, either in whole, or in part. In other words, if ordinary care on the part of the plaintiff would have enabled him to escape the consequences of the defendant’s negligence, he has no ground of complaint.”); Dressler v. Davis, 7 Wis 527, 531 (1859) (“H]t was necessary for the [plaintiff], in order to make out a prima facie case, in the first instance, to prove, not only that the injury in question arose from the carelessness or negligence of the [defendants], or their servant, but also that his own carelessness or negligence did not contribute to it.”).

 Plaintiff and the dissent argue that, if we are to recognize the existence of contributory negligence at the time of the adoption of the constitution, we should also take into account certain doctrines that she asserts could have been advanced in response to an assertion of contributory negligence, such as the last clear chance doctrine and gross negligence. Those doctrines, however, are not applicable to this case. To begin with, plaintiff did not raise either of them before the trial court, although she had opportunity to do so. Particularly in light of the fact that each of the doctrines that she now invokes requires particular factual showings, we are disinclined to entertain any consideration of those doctrines at this stage in the proceedings. See Peeples v. Lampert, 345 Or 209, 219-20, 191 P3d 637 (2008) (appellate courts must exercise “utmost caution” when addressing unpreserved arguments because, among other things, “preservation fosters full development of the record, which aids the trial court in making a decision and the appellate *386 court in reviewing it”). Indeed, gross negligence ordinarily must be pleaded as a separate claim, which plaintiff did not do in this case. See generally Fassett v. Santiam Loggers, Inc., 267 Or 505, 508, 517 P2d 1059 (1973) (describing differences between claims). Our review in this case is limited to the claim that plaintiff actually asserted. Hughes v. PeaceHealth, 344 Or 142, 152, 178 P3d 225 (2008). As for last clear chance, there is no evidence of its widespread recognition by 1857. The origins of the doctrine are ordinarily attributed to the English case of Davies v. Mann, 10 M & W 546, 152 Eng Rep 588 (1842). As Professor G. Edward White has observed, however, Davies was not read to have adopted such a categorical exception to the rule of contributory negligence in this country until the 1880s. G. Edward White, Tort Law in America: An Intellectual History 45-46 (2d ed 2003). According to White, “the doctrine had not in fact originated in Davies v. Mann, at least as a principle of negligence law; it was the creation of later treatise writers who extracted it from the Davies case and others.” Id. The first case in this country even to mention Davies is an 1852 Vermont case, Trow v. Vermont C. R.R., 24 Vt 487 (1852). This court did not cite Davies until 1890, in Moses v. S. P. R. R. Co., 18 Or 385,402,23 P 498 (1890), and did not mention “last clear chance” until 1911, in Smith v. Southern Pacific Co., 58 Or 22, 36, 113 P 41 (1911).